1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   JACOB ANDREW NOVELOZO,                    CASE NO. C25-111 JNW

11                            Plaintiff,       ORDER GRANTING
                                               DEFENDANTS' MOTION TO
12            v.                               DISMISS AND DENYING
                                               PLAINTIFF'S MOTION TO
13   PORT OF SEATTLE, STEVE                     AMEND
     METRUCK, KATIE GERARD,
14   THERESA CUMMINS, DAN
     FITZGERALD, SANDERS MAYO,
15   GREG GAUTHIER, DELMAS
     WHITTIKER,
16
                             Defendants.
17

18          This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 23) and

19   Plaintiff's Motion to Amend (Dkt. No. 26). Having reviewed the Motions, the Responses (Dkt.

20   Nos. 30, 31), the Replies (Dkt. Nos. 32, 35), the Surreply (Dkt. Nos. 36), the Notice of

21   Supplemental Authority and Response (Dkt. Nos. 34, 37), and all supporting materials, the Court

22   GRANTS Defendants' Motion and DENIES Plaintiff's Motion.

23

24

**BACKGROUND**

Pro se Plaintiff Jacob Novelozo lost his job as a maritime carpenter with the Port of Seattle after he refused to comply with the Port's COVID-19 vaccination policy, called the "HR-34 Vaccine Policy." (Second Amended Complaint ¶¶ 5.1-5.10 (Dkt. No. 21).) Although the Port granted Novelozo an exemption to the HR-34 Vaccine Policy based on his religious objections to the vaccine, the Port refused to accommodate him because doing so would cause an undue hardship. (Id. ¶¶ 5.7-5.9.) Novelozo brings a variety of state and federal law claims against the Port of Seattle and seven individuals who are alleged to have "had an active role during the time of the" vaccine policy pursuant to which Novelozo's was terminated in November 2021. (SAC ¶¶ 2.2, 5.1-5.10, 8.1-8.9.) Below, the Court review the claims Novelozo pursues and the relevant factual allegations in the Second Amended Complaint (SAC), and then examines Novelozo's proposed Third Amended Complaint.

**A.  Novelozo's Second Amended Complaint**

**1.  Causes of Action**

The SAC contains five causes of action: (1) a violation of the right to privacy under both the U.S. Constitution (Fourth Amendment) and Washington State Constitution (Art. I, Sec. 7) (SAC ¶ 8.1); (2) a Substantive Due Process claim under federal law (SAC ¶ 8.2); (3) a claim that "Defendant" violated Novelozo's "right to Informed Consent, implied by" federal and state law (SAC ¶ 8.3); (4) a state law wrongful termination claim against "Defendant" (SAC ¶ 8.4); and (5) a Title VII discrimination claim against "Defendant" (SAC ¶¶ 8.5-8.9). For each cause of action, Novelozo's SAC identifies only "Defendant" in the singular, rather than the plural, which makes it difficult to know the relevant defendant associated with each cause of action. But given

Novelozo's <u>pro se</u> status, the Court construes each claim as having been alleged against each named defendant.

Defendants correctly point out that Novelozo's SAC actually contains several more claims than just the five causes of action. Defendants recast Novelozo's claims as follows: (1) 42 U.S.C. § 1983 claims for violations of the Free Exercise Clause (Fifth Cause of Action), the Equal Protection Clause (Fifth Cause of Action), the Substantive Due Process Clause (Second Cause of Action), and the Fourth Amendment (First Cause of Action); (2) a claimed violation of right to privacy under Article I, Section 7 of the Washington State Constitution (First Cause of Action); (3) a claimed violation of right to informed consent under the Emergency Use Authorization Act ("EUA Act") (21 U.S.C. §360bbb-3), the Public Readiness and Emergency Preparedness Act ("PREP Act") (42 U.S.C. §247d-6d, et seq.), the Food, Drug, and Cosmetic Act ("FDCA") (21 U.S.C. § 301, et seq.), and "Washington Informed Consent Statutes" (Third Cause of Action); (4) wrongful termination in violation of public policy under Washington common law (Fourth Cause of Action); and (5) discrimination and/or failure to accommodate religious beliefs under Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. §2000e, et seq.) (Fifth Cause of Action). (<u>See</u> Mot. at 3 (citing SAC, pp.32-37).) The Court uses Defendants' framing of the claims, which accurately track to the legal framework applicable to each of Novelozo's claims.

## 2.    Relevant Factual Allegations

Novelozo began his employment with the Port in 2018, and was promoted to a fulltime carpenter in early 2019. (SAC ¶¶ 5.1-5.2) In September 2021, the Port's Executive Director, Defendant Stephen Metruck, notified employees of the HR-34 Vaccine Policy that required all Port employees to become vaccinated against COVID-19 as a condition of employment. (<u>Id.</u> ¶

5.4.) Employees were permitted to apply for an exemption and accommodation. (Id. ¶ 5.6.)
Plaintiff alleges he applied for a religious exemption on account of his "deeply held religious
belief that Jesus Christ is his (our) Lord and Savior and, furthermore, that Jesus did not want him
to put the Covid-19 injectables into his body (temple)." (Id. ¶¶ 5.7-5.8.) On October 14, 2021,
the Port acknowledged his religious exemption, but found that it was unable to accommodate
him without causing an undue hardship. (Id. ¶ 5.9 & Ex. 8.) Novelozo was then terminated on
November 15, 2021 for not complying with the HR-34 Vaccine Policy. Novelozo alleges that he
also received a notice from Defendant Katie Gerard confirming his termination for not
complying with the HR-34 Vaccine Policy. (Id. ¶ 5.11.)

After termination, Novelozo sent a "Constructive Legal Notice" to the Port on November
29, 2021. (SAC ¶ 5.12 & Ex. A.) The notice post-dates Novelozo's termination, but appears to
be a request for an exemption on religious grounds, and does not acknowledge his termination.
(Id. Ex. A.) Indeed, the letter states: "Should you decide to wrongfully terminate my employment
for 'non-compliance' with the vaccine mandate, I am requesting a written and signed notice of
termination as I am not voluntarily resigning." (Id.) Novelozo then waited until November 15,
2024 to send a Tort Claim to the Port, and he alleges that he has not heard a response. (Id. ¶
5.14.) He claims he has suffered mental, emotional, and financial injuries, and specifically seeks
$1,526,860.80 for all damages. (Id. ¶¶ 5.16-17, 10.1.)

Absent from Novelozo's SAC are any specific allegations concerning the individually-
named Defendants. Aside from the reference to Metruck and Gerard noted above, Novelozo
alleges only that non-party Kathleen Moriarty, his supervisor, told him know that "even religious
and medical exemptions would likely not be honored[.]" (SAC ¶ 7.3(D).) As pleaded, the SAC
contains no allegations concerning Defendants Theresa Cummins, Dan Fitzgerald, Sanders

Mayo, Greg Gauthier, and Delmas Whittiker. Novelozo's SAC also lacks allegations about other specific Port employees who were subject to the HR-34 Vaccine Policy. Instead, Novelozo contends that the Port's "decision to terminate was uniformly applied to all 'unvaccinated' employees, regardless of whether they posed an actual risk of transmission or not." (Id. ¶ 7.2.)

Novelozo's SAC does include a variety of allegations about the COVID-19 vaccines and challenges its efficacy at the time the Policy was implemented. In a section entitled "Argument," Novelozo's SAC contends that by September 2021, there was no evidence that vaccines were effective at stopping COVID-19 transmission. (SAC ¶ 7.1.) He further contends that breakthrough cases frequently occurred, including "several vaccinated coworkers" at the Port. (Id.) He alleges that at the time of the Policy's implementation, the vaccine could "no longer guaranteed" immunity, meaning that the vaccination was merely a "measure that might alleviate the severity of symptoms" or a "personal treatment choice rather than a tool to stop spread or reduce infection risk." (Id. ¶ 7.1(E).)

Defendants Port of Seattle, Fitzgerald, Gerard, and Mayo, and Whittiker have moved to the dismiss the SAC. The other three defendants did not move, as they have not been served. And Novelozo has since filed declarations showing that service was unsuccessful as to Gauthier, Cummins, and Metruck. (Dkt. Nos. 27-29.) Because Novelozo has not served the remaining individually-named defendants, the Court does not analyze the claims alleged against them.

**B.    Allegations in Proposed Third Amended Complaint**

In his proposed Third Amended Complaint (TAC), Novelozo has made a modest number of changes and additions to the allegations, and, most significantly, added a new claim under the Washington Law Against Discrimination. (Proposed TAC ¶¶ 8.6-9.0 (Dkt. No. 26-1).) He also

1    seeks punitive damages for what he believes is willful discrimination in violation of the WLAD.

2    (Id.)

3                                              **ANALYSIS**

4    **I.    Motion to Dismiss**

5    **A.    Legal Standard**

6            Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

7    claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must

8    construe the complaint in the light most favorable to the non-moving party and accept all

9    well-pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney,

10   Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d

11   658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough

12   facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

13   544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that

14   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

15   alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

16   **B.    Novelozo's Section 1983 Claims Require Dismissal**

17           Novelozo fails to properly allege any Section 1983 claims against the individual

18   defendants and the Port. The Court reviews the defects in the claims in the subsections below.

19           **1.    Section 1983 Claims Against Individual Defendants**

20           Section 1983 imposes liability on any "person who, under color of any statute, ordinance,

21   regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

22   causes to be subjected, any citizen of the United States or other person within the jurisdiction

23   thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

24

laws[.]" 42 U.S.C. § 1983. To state a claim under Section 1983 the plaintiff must allege: (1) the action was committed by a person acting "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. <u>Ochoa v. Pub. Consulting Grp., Inc.</u>, 48 F.4th 1102, 1107 (9th Cir. 2022) (quoting <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)). To be individually liable under Section 1983, a defendant must have personally participated in the alleged deprivation of rights. <u>Avalos v. Baca</u>, 596 F.3d 583, 587 (9th Cir. 2010).

Novelozo's Section 1983 claims against to Defendants Fitzgerald, Mayo, Whittaker, and Gerard all fail because they include no allegations as to how any of them personally participated in the alleged constitutional violations or how they acted under color of law. Without such allegations, these claims (which include Novelozo's First, Second, and Fifth Causes of Action against these Defendants) all fail and must be DISMISSED. <u>See</u> <u>Avalos</u>, 596 F.3d at 587. The Court's dismissal is without prejudice, meaning that Novelozo may file an amended complaint in an effort to include sufficient allegations to support the claims.

### 2.    Free Exercise Claim Fails

The Port seeks dismissal of Novelozo's Free Exercise Claim—his fifth cause of action. The Court agrees with the Port that this is not adequately pleaded. After reviewing the legal framework, the Court explains why the claim fails.

### a.    Legal Framework

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST. amend. I. In assessing a Free Exercise claim, the Court must first determine what level of scrutiny to apply. Rational basis review applies to neutral laws of general applicability, while strict scrutiny applies to those which are not neutral and/or which are not generally applicable. <u>See</u> <u>Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.</u>, 82 F.4th 664, 685-86 (9th Cir. 2023).

1    In resolving the level of scrutiny to apply, the Court must assess the nature of the law or

2    policy to determine whether it is a neutral law of general applicability. "Supreme Court authority

3    sets forth three bedrock requirements of the Free Exercise Clause that the government may not

4    transgress, absent a showing that satisfies strict scrutiny." Fellowship, 82 F.4th at 686. "First, a

5    purportedly neutral 'generally applicable' policy may not have 'a mechanism for individualized

6    exemptions.'" Id. (quoting Fulton v. City of Philadelphia, Pennsylvania, 593 U.S. 522, 533

7    (2021) (quotation omitted). The Court in Fulton highlighted as problematic that the city

8    commissioner had the "sole discretion" to determine whether to grant foster care providers a

9    religious exemption without any objective criteria, which triggered stricter scrutiny. Id. at 535,

10   536 (concluding "that the inclusion of a formal system of entirely discretionary exceptions . . .

11   renders the contractual non-discrimination requirement not generally applicable"). The Ninth

12   Circuit has warned that Fulton should not be limited to scenarios where the state had

13   "'unfettered' discretion." Fellowship, 82 F.4th at 687. "Properly interpreted, Fulton counsels that

14   the mere existence of a discretionary mechanism to grant exemptions can be sufficient to render

15   a policy not generally applicable, regardless of the actual exercise." Id. at 687–88. "Second, the

16   government may not 'treat . . . comparable secular activity more favorably than religious

17   exercise." Fellowship, 82 F.4th at 686. (quoting Tandon v. Newsom, 593 U.S. 61, 62 (2021)).

18   "Third, the government may not act in a manner 'hostile to . . . religious beliefs' or inconsistent

19   with the Free Exercise Clause's bar on even 'subtle departures from neutrality.'" Id. (quoting

20   Masterpiece Cakeshop v. Colorado C.R. Comm'n, 584 U.S. 617, 638 (2018) (citation omitted);

21   citing Church of Lukumi Babalu Aye, Inc. v. City of Hialeah., 508 U.S. 520, 534 (1993)).

22           **b.    The Policy is Neutral and Generally Applicable**

23           The HR-34 Vaccine Policy is subject to rational basis review because it is a facially-

24   neutral and generally-applicable policy. On its face, the Policy applies to all employees and

1    distinguishes only between those who are vaccinated and those who are not. It adds as a neutral

2    condition of employment that each employee must become vaccinated, which was reasonably

3    and rationally related to the goal of protecting worker and workplace safety during the COVID-

4    19 pandemic. The policy does not evidence any discrimination against religious employees or

5    their beliefs. But it does offers those with sincerely held religious beliefs or other reasons to

6    apply for an exemption and accommodation. This does not undermine the Policy's neutrality

7    because, if anything, it confers a benefit to those with religious objections.

8         Additionally, there are no allegations that there is a discretionary mechanism that could

9    or has been used to discriminated against employees seeking religious exemptions and

10   accommodations. The Policy merely states that Human Resources will consider a request for

11   exemption and "if the request is approved for further processing, will engage in the interactive

12   process with the employee clarify the nature of the request, determine exemption eligibility, and

13   identify potential reasonable accommodations (with assistance from the employee's supervisor)."

14   (Declaration of Shannon Phillips Ex. A (Dkt. No. 24) (document properly considered, given that

15   it is referenced and relied on in the SAC.) And Novelozo has not alleged that those with

16   discretion abused their authority or that there is any pattern of discrimination against religious

17   objectors. The allegations thus do not suffice to satisfy the <u>Fulton</u> test.

18              **c.    The Policy Survives Rational Basis Review**

19        The HR-34 Vaccine Policy satisfies rational basis review. "Under rational basis review,

20   we must uphold the rules if they are rationally related to a legitimate governmental purpose."

21   <u>Stormans, Inc. v. Wiesman</u>, 794 F.3d 1064, 1084 (9th Cir. 2015). Plaintiff here has "the burden

22   to negat[e] every conceivable basis which might support [the rules]." <u>FCC v. Beach Commc'ns,

23   Inc.</u>, 508 U.S. 307, 315 (1993) (internal quotation marks omitted). The HR-34 Vaccine Policy

24   was intended to safeguard the health and safety of those working in Port facilities. The Policy

1    states that it is "intended to safeguard the health and well-being of employees and their families,

2    the community, visitors, and others who spend time in our facilities from COVID-19's infectious

3    conditions that can be reduced through an effective employee vaccination requirement program."

4    (Policy at 1 (Dkt. No. 24 at 8).) And the Policy states that it "is based upon guidance provided by

5    the Centers for Disease Control and Prevention (CDC) and public health and licensing

6    authorities[.]" (Id.) These are more than reasonable and rational governmental interests. See

7    Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 18 (2020) ("Stemming the spread of

8    COVID-19 is unquestionably a compelling interest."). And Novelozo has not met his "burden to

9    negat[e] every conceivable basis which might support [the Policy]." FCC, 508 U.S. at 315

10    (internal quotation marks omitted).

11        As alleged, the HR-34 Vaccine Policy survives constitutional scrutiny. The Court

12    GRANTS the Motion and DISMISSES the claim. But the Court's dismissal is without prejudice,

13    meaning that Novelozo may file an amended complaint in an effort to include sufficient

14    allegations to support the claim.

15        **3.    Equal Protection Claim Fails**

16        The Equal Protection Clause "commands that no State shall 'deny to any person within

17    its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons

18    similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S.

19    432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202 (1982)). To prevail on an equal-protection

20    claim, the plaintiff "must [first] show that a class that is similarly situated has been treated

21    disparately." Boardman v. Inslee, 978 F.3d 1092, 1117 (9th Cir. 2020) (citation and quotation

22    omitted). "[O]ur first step is to identify the state's classification of groups." Id. (citation and

23    quotation omitted). "'The general rule is that legislation is presumed to be valid and will be

24

1   sustained if the classification drawn by the statute is rationally related to a legitimate state

2   interest,' but heightened standards of review apply when suspect classification like race,

3   alienage, or national origin[ ] are implicated or 'when state laws impinge on personal rights

4   protected by the Constitution.'" Williams v. Brown, 567 F. Supp. 3d 1213, 1227 (D. Or. 2021)

5   (quoting Cleburne, 473 U.S. at 440). Where rational basis applies, "[t]he Equal Protection Clause

6   is satisfied so long as there is a plausible policy reason for [a] classification, . . . and the

7   relationship of the classification to its goal is not so attenuated as to render the distinction

8   arbitrary or irrational." Crawford v. Antonio B. Won Pat Int'l Airport Auth., 917 F.3d 1081,

9   1095–96 (9th Cir. 2019) 1095–96 (citations omitted) (quoting Nordlinger v. Hahn, 505 U.S. 1,

10  11 (1992)).

11      Novelozo's Equal Protection claim fails because he has not alleged membership in a

12  suspected class against which the Policy discriminates or an infringement of a fundamental right.

13  Novelozo alleges that the Policy distinguishes between those who are vaccinated and those who

14  are unvaccinated. But unvaccinated individuals are not members of a suspect class, and

15  Novelozo cites no authority to support such a proposition. Additionally, Novelozo has not

16  identified any authority to support a theory that refusing a workplace vaccine requirement

17  implicates a fundamental constitutional right. As such, the Policy is subject to rational basis

18  review. See Williams, 567 F. Supp. 3d at 1227. And for the same reasons explained above, the

19  Policy survives rational basis review and this claim fails as pleaded. See Moriarty v. Port of

20  Seattle, No. 2:23-CV-01209-TL, 2024 WL 4290279, at *11 (W.D. Wash. Sept. 25, 2024)

21  (reaching the same conclusion about the HR-34 Vaccine Policy).

22      In his opposition, Novelozo argues that the Port should have engaged in an interactive

23  process to provide religious accommodations and set out defined standards for an undue

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND - 11

1   hardship. Novelozo also contends, without any citation to the SAC or any evidence, that other

2   governmental employers in King County provided standards for accommodations. But these

3   arguments do not support Novelozo's Equal Protection claim. They do not show either a

4   fundamental right or discrimination against a suspect class. As alleged, the HR-34 Vaccine

5   Policy does not violate Equal Protection. The Court GRANTS the Motion and DISMISSES the

6   claim. But the Court's dismissal is without prejudice, meaning that Novelozo may file an

7   amended complaint in an effort to include sufficient allegations to support the claim.

8          **4.      Inadequate Substantive Due Process Claim**

9          The Port has sufficiently identified flaws in Novelozo's Substantive Due Process claim.

10         "Substantive due process protects individuals from arbitrary deprivation of their liberty

11  by government." Sylvia Landfield Tr. v. City of Los Angeles, 729 F.3d 1189, 1195 (9th Cir.

12  2013) (citation and quotation omitted). To constitute a violation of substantive due process, the

13  alleged deprivation must "shock the conscience and offend the community's sense of fair play

14  and decency." Id. (quoting Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1154 (9th Cir. 2012)).

15  Due Process imposes heightened protection for "those fundamental rights [or liberty interests]

16  which are deeply rooted in this Nation's history and tradition." Washington v. Glucksberg, 521

17  U.S. at 719-20. And if a law or policy infringes a fundamental right or liberty interest, strict

18  scrutiny applies. Id. at 721. But rational basis review applies where the governmental action

19  infringes on a nonfundamental right or liberty interest. Id. at 722.

20         "In cases involving employment, '[w]e have held that a plaintiff can make out a

21  substantive due process claim if she is unable to pursue an occupation and this inability is caused

22  by government actions that were arbitrary and lacking a rational basis.'" Armstrong v. Reynolds,

23  22 F.4th 1058, 1079–80 (9th Cir. 2022) (quoting Engquist v. Or. Dep't of Agric., 478 F.3d 985,

24

997 (9th Cir. 2007), aff'd on other grounds, 553 U.S. 591 (2008)). "This substantive due process protection is based on a liberty interest in an occupation, and 'protects the right to pursue an entire profession, and not the right to pursue a particular job.'" Id. at 1080 (quoting Engquist, 478 F.3d at 998).

Novelozo has not pleaded a viable Substantive Due Process claim because he has not identified a fundamental right that has been infringed. Indeed, in his Response, Novelozo concedes that there is no fundamental right to employment, but suggests that he has a fundamental right not to be forced to submit to a vaccine as a condition of employment. But Novelozo identifies no authority to support this assertion. Consistent with Engquist and Armstrong Novelozo does not have a constitutional right to any particular job, which means that a vaccine condition on this specific job does not implicate his right to employment as a carpenter elsewhere. Additionally, the Ninth Circuit recently confirmed that there is no fundamental right to refuse a vaccine. Health Freedom Def. Fund, Inc v. Carvalho, ___ F.4th ___, 2025 WL 2167401, *7-*8 (9th Cir. July 31, 2025). This decision then further undermines Novelozo claim that he was forced to undergo a medical procedure, or that the Policy violates his rights and public policy. No authority supports this argument, and Health Freedom fully undermines it. Even before Health Freedom, Courts have routinely rejected this as a basis for implicating a fundamental right. See Brock v. City of Bellingham, No. 2:24-CV-850 BJR, 2025 WL 254725, at *9 (W.D. Wash. Jan. 21, 2025) (collecting cases and rejecting the argument that a vaccine mandate implicates the right to refuse coerced medical treatment). And to the extent that the HR-34 Policy implicates a nonfundamental right, it survives rational basis review, as the Court has explained above.

1    As pleaded, the Substantive Due Process claim fails. The Court therefore GRANTS the

2   Motion and DISMISSES this claim. But the Court's dismissal is without prejudice, meaning that

3   Novelozo may file an amended complaint in an effort to include sufficient allegations to support

4   the claim.

5   **C.    Novelozo Fails to Adequately Plead a Federal Privacy Claim**

6    "[F]ederal constitutional law recognizes a 'right to informational privacy' stemming from

7   'the individual interest in avoiding disclosure of personal matters.'" A.C. by & through Park v.

8   Cortez, 34 F.4th 783, 787 (9th Cir. 2022) (quoting Endy v. County of Los Angeles, 975 F.3d

9   757, 768 (9th Cir. 2020)). "[T]he right is not absolute; rather, it is a conditional right which may

10   be infringed upon a showing of proper governmental interest." Id. (citation and quotation

11   omitted). In assessing such a claim, the Court is to engage in a "balancing test to determine

12   whether the government's right to infringe outweighs the individual's privacy interest[.]" Id. The

13   test requires consideration of "(1) the type of information requested, (2) the potential for harm in

14   any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent

15   unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express

16   statutory mandate, articulated public policy, or other recognizable public interest militating

17   toward access." Id. (citation and quotation omitted).

18    Novelozo has not pleaded a viable privacy claim. There are no competent allegations that

19   Novelozo's vaccination status is sensitive or intimate such that its disclosure would cause any

20   injury. Nor has Novelozo identified what the harm he suffered from the disclosure of his

21   vaccination status or that the Port did not have adequate privacy safeguards in place. Even if

22   vaccination status was sensitive information, the need to disclose it was reasonable and furthered

23   the Port's substantial interest in providing a safe workplace. The Policy itself was enacted to help

24

1    comply with a substantial public policy mandate from the CDC and local health agencies.

2    Novelozo has not adequately alleged a violation of a constitutionally-protect right to privacy.

3      In his opposition, Novelozo cites to two different opinions from the Ninth Circuit, neither

4    of which supports his argument. First, in <u>Montana Medical Assoc. v. Knudsen</u>, the Ninth Circuit

5    examined a challenge to a Montana law that prohibited discrimination based on vaccination

6    status—a law that has no application here to acts occurring in Washington. <u>Id.</u>, 119 F.4th 618,

7    620 (9th Cir. 2024). The case did not examine a federal right to privacy, and it instead considered

8    claims centered on whether the Montana law violated divergent federal laws that have no

9    application here. The case does not support Novelozo's position. Second, Novelozo invokes

10   <u>Health Freedom Def. Fund, Inc. v. Carvalho</u>, 104 F.4th 715 (9th Cir. 2024). But that opinion was

11   vacated and a new opinion was issued after rehearing. <u>See</u> <u>id.</u>, ___ F.4th ___, 2025 WL

12   2167401. More importantly, the case did not involve privacy claims, and it provides no support

13   to Novelozo. <u>See</u> <u>id.</u>, ___ F.4th ___, 2025 WL 2167401 (9th Cir. July 31, 2025).

14     As pleaded, the Substantive Due Process claim fails. The Court therefore GRANTS the

15   Motion and DISMISSES this claim. But the Court's dismissal is without prejudice, meaning that

16   Novelozo may file an amended complaint to include sufficient allegations to support the claim.

17   **D. Novelozo Fails to Adequately Plead a State Law Privacy Claim**

18     Defendants seek dismissal of Novelozo's state-law based privacy claim, and the Court

19   agrees with Defendants' Motion on this claim.

20     First, no cause of action for damages under Article I, Section 7 of the Washington State

21   Constitution may be brought without guidance from the legislature. <u>See</u> <u>Reid v. Pierce Cnty.</u>, 136

22   Wn.2d 195, 213 (1998). In <u>Reid</u>, the Supreme Court explained that if a plaintiff may obtain relief

23   under common law, then a privacy claim is better addressed under the common law invasion of

24

1   privacy tort. Id. On this point, Novelozo provides little response. He suggests that RCW

2   74.42.040 indicates the legislature's interest in giving Washingtonians the right to refuse medical

3   treatment and to obtain informed consent. But as Defendants point out, this statute concerns the

4   rights of residents at nursing homes, not government employees. Novelozo's argument is entirely

5   unconvincing and the Court finds no grounds to permit a privacy claim based on the Washington

6   State Constitutional.

7        Second, to the extent Novelozo has attempted to allege a claim based on the common law

8   invasion of privacy tort, he has neither exhausted his administrative remedies nor adequately

9   pleaded the claim. At the outset, the claim fails because Novelozo did not include it in his state

10  tort claim form, which is a pre-requisite to filing suit. See RCW 4.96.020. Novelozo's claim

11  form only identified his belief that he was wrongly terminated because the Port refused to

12  accommodate his religious belief, not that his privacy rights were infringed. (Phillips Decl. Ex.

13  F.) The claim form did not provide enough information to put the government on notice of the

14  common law privacy claim and its contents, as is required. See Renner v. City of Marysville, 168

15  Wn.2d 540, 546 (2010). Additionally, Novelozo cannot now exhaust this claim because it is

16  subject to a three-year statute of limitations that expired in 2024. See RCW 4.16.080(2). For

17  these reasons, the Court DISMISSES this claim. Although amendment is likely futile, the Court

18  grants leave to amend and its dismissal is without prejudice.

19  **E.    Novelozo Fails to Adequately Plead an Informed Consent Claim**

20       Novelozo alleges an "informed consent" claim based on federal and state law. As to the

21  federal law, Novelozo claims his rights stem from the Food, Drug, Cosmetic Act (FDCA), the

22  Emergency Use Authorization Act (EUA Act), and the Public Readiness and Emergency

23

24

1    Preparedness Act (PREP Act), the FCA. As to the state law, he identifies RCW 70.122.010 and

2    RCW 7.70.065. None of these laws supports the claim.

3    First, Novelozo concedes in his response that none of the three federal laws he cites

4    provides a private right of action. (See Resp. at 9.) This admission is consistent with the fact that:

5    (1) the FDCA does not confer a private right of action, PhotoMedex, Inc. v. Irwin, 601 F.3d 919,

6    924 (9th Cir. 2010); (2) the EUA Act, which is part of the FDCA, does not provide a private

7    right of action, see Kiss v. Best Buy Stores, No. 3:22-CV-00281-SB, 2022 WL 17480936, at *8

8    (D. Or. Dec. 6, 2022), aff'd sub nom. Kiss v. Best Buy Stores, Ltd. P'ship, No. 23-35004, 2023

9    WL 8621972 (9th Cir. Dec. 13, 2023); and (3) the PREP Act only provides immunity and creates

10   no private right of action, see Roberts v. Inslee, No. 2:23-CV-0295-TOR, 2024 WL 1160895, at

11   *7 (E.D. Wash. Mar. 18, 2024).

12   Second, the state law on which Plaintiff relies are inapplicable. These laws do not

13   identify a fundamental right to refuse an employer's vaccine mandate. They instead speak to the

14   right to decide or refuse life-sustaining treatment (RCW 70.122.010) and informed consent that a

15   health care provider must give to a patient (RCW 7.70.065). These state laws do not confer a

16   private right of action for someone in Novelozo's position.

17   As pleaded, these claims fail. The Court therefore GRANTS the Motion and DISMISSES

18   the claims. But the Court's dismissal is without prejudice, meaning that Novelozo may file an

19   amended complaint in an effort to include sufficient allegations to support the claims.

20   **F.    Novelozo's Wrongful Termination Claim Fails to State a Claim**

21   Defendants moved to dismiss Novelozo's wrongful termination claim, which Novelozo

22   has not opposed. The Court finds merit in Defendants' position and dismisses the claim.

23

24

A claim for wrongful termination in violation of public policy "generally applies in four specific scenarios: (1) where employees are fired for refusing to commit an illegal act, (2) where employees are fired for performing a public duty or obligation, (3) where employees are fired for exercising a legal right or privilege, and (4) where employees are fired in retaliation for reporting employer misconduct." <u>Suarez v. State</u>, 3 Wn.3d 404, 430 (2024) (citation and quotation omitted). "If the claim fits neatly within one of these scenarios, in order to prevail on the cause of action, the plaintiff employee must demonstrate that their termination may have been motivated by reasons that contravene a clear mandate of public policy." <u>Id.</u> The plaintiff must then satisfy two steps: "First, the 'public policy' was manifested in the constitution, statute, regulatory provision, or court decision. Second, the conduct associated with the public policy was a 'significant factor' in the decision to terminate the worker." <u>Id.</u> (citation and quotation omitted).

Novelozo's claim fails for several reasons. First, he has not alleged that any of the individual defendants were responsible or involved in his termination. This is fatal to the claims against them. Second, there are no competent allegations that he was terminated because of his religious views. The only allegations are that he was unable to be accommodated under the neutral vaccination mandate. He has not identified how his termination violates public policy or that his religious views were a significant factor in the decision to terminate him.

As pleaded, Novelozo's wrongful termination claims fail. The Court therefore GRANTS the Motion and DISMISSES the claims. But the Court's dismissal is without prejudice, meaning that Novelozo may file an amended complaint in an effort to include sufficient allegations to support the claims.

**G.    Novelozo Fails to Adequately Plead a Title VII Discrimination Claim**

The Court agrees with Defendants that Novelozo's Title VII claims all fail.

First, the Court finds that Novelozo's Title VII claims cannot be brought against the individual Defendants. See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993). Second, the claims against the Port are barred because he did not administratively exhaust them by complying with the EEOC's administrative process. 42 U.S.C § 2000e-5(e)(1). This exhaustion is mandatory and fatal to his claim. Fort Bend County, Texas v. Davis, 487 U.S. 541, 549 (2019). Plaintiff concedes he did not exhaust the EEOC process, but claims that he was constructively prevented from timely filing. (Resp. at 11 (citing proposed TAC ¶ 5.18).) But this fact is not alleged in the SAC. Even if the Court considers it, Novelozo has not identified any substantive impediment. Novelozo claims that he tried to fill out EEOC forms online but had questions that he tried in vain to get answered by a help desk via telephone. (TAC ¶ 5.18.) He claims that he spoke to other co-workers who informed him that the EEOC was overloaded with cases and lacked customer service agents, so he gave up the appeal as "futile." (TAC ¶ 5.18.) These non-specific allegations do not identify any actual impediment that might have explained his failure to exhaust.

As pleaded, Novelozo's Title VII claims fails. The Court therefore GRANTS the Motion and DISMISSES the claims. But the Court's dismissal is without prejudice, meaning that Novelozo may file an amended complaint in an effort to include sufficient allegations to support the claim.

## II.    Motion to Amend

Novelozo seeks to amend his complaint to add a new WLAD claim. The Court finds that the proposed amendment is futile and therefore DENIES the Motion. And although Novelozo's reply is untimely, the Court has considered the arguments relevant to the Motion to Amend.

When a party seeks to amend its pleading, as Novelozo does here, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied

1    with extreme liberality." <u>Eminence Cap., LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir.

2    2003) (quotation omitted). The court considers five factors in deciding whether to grant leave to

3    amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of

4    amendment, and (5) whether the party has previously amended its pleading. <u>See</u> <u>Foman v. Davis</u>,

5    371 U.S. 178, 182 (1962); <u>see also</u> <u>Allen v. City of Beverly Hills</u>, 911 F.2d 367, 373 (9th Cir.

6    1990). "Not all factors merit equal weight," and the Court must assess "[p]rejudice [as] the

7    touchstone of the inquiry under rule 15(a)." <u>Eminence</u>, 316 F.3d at 1052 (citation and quotation

8    omitted). "Absent prejudice, or a strong showing of any of the remaining <u>Foman</u> factors, there

9    exists a presumption under Rule 15(a) in favor of granting leave to amend." <u>Id.</u>

10           As Defendants correctly point out, Novelozo's proposed WLAD claim is time barred and

11   amendment would be improper due to futility. A three year statute of limitations applies to the

12   WLAD claim. <u>See</u> <u>Antonius v. King Cnty.</u>, 153 Wn.2d 256, 260 (2004). And because Novelozo

13   had to exhaust his state tort administrative remedies, the three year period is extended 60 days.

14   <u>See</u> <u>Castro v. Stanwood Sch. Dist. No. 401</u>, 151 Wn.2d 221, 225 (2004). But the statute runs

15   from the employer's decision not to accommodate and the alleged discrimination. <u>See</u> <u>Albright</u>

16   <u>v. State, Dep't of Soc. & Health Servs. Div. of Developmental Disabilities</u>, 65 Wn. App. 763,

17   767 (1992), <u>as corrected</u> (Aug. 3, 1992). Applied here, the statute began to run on October 14,

18   2021, when Novelozo was informed of the denial of his accommodation. The statute of

19   limitations then ran until December 12, 2024, but Novelozo waited until January 16, 2025, to file

20   suit. And while Novelozo believes that the statute of limitations runs from the date of

21   termination, the Title VII cases he identifies actually supports Defendants' position. (<u>See</u> Reply

22   at 3-4 (citing <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 258 (1980) (holding that the statute

23   of limitations on a Title VII claim ran from the denial of tenure, not termination); <u>Chardon v.</u>

24

1    Fernandez, 454 U.S. 6, 8 (1981) (affirming Ricks and holding that the statute of limitations for a

2    Title VII claim runs from the date of notice of the discriminatory act, not the subsequent

3    termination)).) Novelozo's WLAD claim is untimely and leave to amend would be improper here

4    because it would be futile. See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty., 708 F.3d

5    1109, 1117 (9th Cir. 2013) (noting that although leave should be freely given, it should not be

6    given when the amendment is futile). Because the proposed amendment is futile, the Court

7    DENIES the Motion to Amend.

8                                          **CONCLUSION**

9            The Court agrees with Defendants that the claims alleged in the SAC have not been

10   adequately pleaded. None of the claims may proceed as drafted and the Court GRANTS the

11   Motion to Dismiss. The Court grants Novelozo leave to amend the claims in the SAC, and he

12   must file any amended complaint within 30 days of entry of this order. If Novelozo fails to

13   comply with this Order, the Court will administratively terminate this matter.

14           The Court also DENIES Novelozo's Motion to Amend, as the proposed WLAD claim is

15   untimely and amendment would be futile.

16           The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

17           Dated August 18, 2025.

18

19                                          Marsha J. Pechman
                                            United States Senior District Judge

20

21

22

23

24